# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

PROGRESSIVE MAX INSURANCE
COMPANY,

       Plaintiff,

v.

EMILE TOCA, <u>et al.</u>,

       Defendants.

Case No. 2:05-CV-0845-KJD-PAL

**<u>ORDER</u>**

Currently before the Court is Plaintiff Progressive Max Insurance Company's

("Progressive"), Motion for Summary Judgment (#56), filed January 19, 2007.  Defendant Emile

Toca ("Toca") filed a Response (#57) on January 30, 2007, to which Progressive filed a Reply (#58)

on February 9, 2007.

## I. Background

On July 11, 2005, Plaintiff filed its Complaint against Defendant Toca in regard to an

insurance policy issued to Defendant Toca in May 2001.  In May 2001, Toca filed an application for

1   automobile insurance with Progressive listing that he was a resident of Mississippi and had a

2   Mississippi driver's lisence.  The vehicle Toca listed in his application was a 1998 Ford Explorer

3   garaged within the same zip code as Toca's residence.  Based on his application, Progressive issued

4   Toca a "Mississippi Motor Vehicle Policy," No. 36479828-5 ("the policy").  Among other things, the

5   policy provided for uninsured/underinsured ("UM/UIM") coverages in the amounts of $100,000.00

6   per person and $300,000.00 per occurrence.

7          All premium payments on the policy were made via direct withdrawal from Toca's bank

8   account at Hancock Bank of Gulfport, Mississippi.  Subsequent renewals were sent to the Mississippi

9   address on Toca's application, including the last policy renewal, running from November 3, 2003, to

10  May 3, 2004.

11         The subject motor vehicle accident occurred in Las Vegas, Nevada, on February 18, 2004,

12  when Toca's 1998 Ford Explorer was struck in the rear by a vehicle driven by tortfeasor Erin Kelly

13  ("Kelly").  Kelly was insured by State Farm Insurance Company ("State Farm"), with liability policy

14  limits of $100,000.00 per person, and $300,000.00 per accident.  State Farm tendered its $100,000.00

15  policy limits on Kelly's behalf in settlement for the February 18, 2004 accident.

16         On February 26, 2004, Toca sent a notice of medical payments and UM/UIM motorist claim

17  to a local Progressive office.  On March 3, 2004, Progressive, through correspondence from their

18  Tupelo, Mississippi office, informed Toca that he had $2,000 in medical payments coverage and

19  UM/UIM coverage in the amount of $100,000.00 per person and $300,000.00 per accident.

20  Progressive notified Toca that it would tender payment of medical expenses once Toca provided

21  Progressive with medical bills.  Toca was also advised that Progressive was reserving all of its rights

22  against Kelly in the matter.  Toca submitted medical bills in July, 2004, and Progressive payed out

23  the $2,000 medical payment coverage.  On January 10, 2005, Toca, through his attorney, demanded

24  Progressive's $100,000.00 UM/UIM policy limits.  On February 14, 2005, Progressive informed

25  Toca that it was still investigating the claim under reservation of rights and that Toca might not be

26  entitled to UM/UIM recovery under the terms of the Mississippi policy and state law.

1   At issue here, among other things, is whether the subject insurance policy is governed by

2   Nevada or Mississippi law.  Progressive claims that Nevada's choice of law doctrine requires the

3   application of Mississippi substantive law.  Contrarily, Toca argues that Nevada's substantive law

4   should apply.  Nevada insurance law provides for excess-type underinsured motorist protection,

5   while Mississippi insurance provides reduction-type underinsured motorist protection.[1]  Arguably,

6   under the circumstances of the current case, Toca stands to recover more in UM/UIM coverage

7   should the Court determine that Nevada substantive law governs the policy.

8   Plaintiff's Complaint seeks an order for declaratory relief that its insurance policy issued to

9   Defendant is valid and enforceable, and that Toca breached the terms and conditions of the policy by

10   failing to notify Progressive of his change of address from Mississippi to Las Vegas, Nevada.

11   Progressive also seeks an order from the Court declaring that the underinsured motorist provisions of

12   Toca's policy are valid and enforceable with respect to the February 18, 2004, claim.  Plaintiffs also

13   seek an order from the Court declaring that Kelly is not underinsured as a matter of law under the

14   Mississippi policy, and that Progressive has no duty to afford underinsured bodily injury coverage

15   under the terms and conditions of the Mississippi policy.

16   **II.  Standard of Law for Summary Judgment**

17   Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

18   and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

19   material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

20   P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

21   initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.

22   The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine

23

24

25   [1]Generally speaking, excess-type underinsured motorist protection allows an insured individual to recover when damages exceed the limits of the tortfeasor's insurance coverage.  Reduction-type underinsurance motorist protection requires that the insured individual's coverage be reduced by the amount recoverable under the tortfeasor's policy.  (See

26   Plt.'s Mot. for Summ. J. at 22.)

3

1 | factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

2 | (1986); Fed. R. Civ. P. 56(e).

3 |      All justifiable inferences must be viewed in the light must favorable to the nonmoving party.

4 | See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

5 | allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

6 | or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See

7 | Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

8 | issues of controversy in favor of the non-moving party where the facts specifically averred by that

9 | party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497

10 | U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

11 | (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

12 | issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without

13 | more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v.

14 | Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

15 |      Summary judgment shall be entered "against a party who fails to make a showing sufficient

16 | to establish the existence of an element essential to that party's case, and on which that party will

17 | bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

18 | if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

19 | **III. Choice of Law**

20 |      Federal courts sitting in diversity must apply "the forum state's choice of law rules to

21 | determine the controlling substantive law." Patton v. Cox, 276 F.3d 493, 495 (9th Cir.2002).  The

22 | Court is thus bound to apply Nevada's choice of law rules in determining whether Nevada or

23 | Mississippi law applies in this case.

24 |     **A. Conflicts of Law**

25 |      In resolving conflict of law issues, Nevada follows the "substantial relationship" or

26 | "significant relationship" test outlined in the Restatement (Second) of Conflicts of Laws when actual

1 conflicts exist between the application of the forum state's law and the application of another state's

2 law.  Insurance Co. of North America v. Hilton Hotels U.S.A., 908 F.Supp. 809 (D. Nev. 1995);

3 Sotirakis v. United Service Automobile Assoc., 787 P.2d 788, 790 (Nev. 1990); Restatement 2d. Of

4 Conflict of laws §§ 6, 145, 188 (1969).  Under the most significant relationship test, the factors to be

5 considered in resolving conflicts of laws questions revolve around the expectation of the parties at

6 the time of contracting, including (a) the place of contracting; (b) the place of negotiation of the

7 contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e)

8 the domicile, residence, nationality, place of incorporation, and place of business of the parties.  Id. at

9 790.

10        Here, it is undisputed that a conflict of law exists between the application of the forum's

11 insurance law, and the application of Mississippi's insurance law.  Under Nevada's conflict of law

12 doctrine and a careful examination of the facts and circumstances of this case, the Court finds that

13 the subject insurance policy should be governed by Mississippi substantive law.

14        In making this finding, the Court notes that Toca completed and filed his application for

15 insurance with Progressive while he was living in Mississippi.  The application listed his residence

16 within Mississippi, his phone number was in Mississippi, and Progressive issued the subject

17 insurance policy to Toca as a Mississippi resident.  All renewals under the contract prior to the

18 subject accident were sent to Toca's listed Mississippi address, and Toca represented that his insured

19 vehicle was garaged in Mississippi and would be used on Mississippi roadways.

20        Furthermore, all policy negotiations took place in Mississippi, and the conditions of the

21 policy were in accordance with Mississippi law—including a choice of law provision.  Toca claims

22 that the place of performance of the subject policy was Nevada, by asserting that Progressive had

23 actual knowledge that Toca lived in Nevada.  The Court is unpersuaded by Toca's argument

24 however, or that said knowledge has a measured effect on the place of performance inquiry here.

25 Toca had renewed his policy as a Mississippi resident and never took the opportunity to change his

26 policy to reflect that he had moved his residence to Nevada.  Rather, after allegedly inquiring about

1 the possibility of changing his policy from Mississippi to Nevada, Toca ultimately decided to renew

2 his Mississippi policy.

3       As touched on above, the location of the subject matter of the contract is Mississippi.  The

4 policy application Toca filled out listed Mississippi as his location of residence, his driver's license

5 was from Mississippi, and the car he listed on the policy was garaged and driven in Mississippi.  Due

6 to such details, Progressive issued a policy and premium rate according to applicable standards in the

7 state of Mississippi.  Moreover, Toca has testified that his insurance payments were directly

8 withdrawn from a Mississippi bank account.  Further, on or about September 27, 2003, Toca was

9 involved in an accident in Las Vegas, Nevada, and made a collision claim with Progressive.  At that

10 time, the property damage estimate as well as the check issued to Toca for collision repairs identified

11 Toca's Mississippi address.  All contacts and correspondence with Toca were to his Mississippi

12 address and Mississippi telephone number.

13       Furthermore, the Court is not persuaded that Defendant has proven that his connections to

14 Nevada are sufficient to establish that the Court should apply Nevada substantive law.  Although

15 Toca claims to have been residing in Las Vegas for several months prior to the subject accident, he

16 had maintained ownership of his home in Mississippi, continued to use a Mississippi driver's license,

17 license plates, and bank accounts.  Moreover, in his deposition taken November 1, 2006, Toca

18 testified that he had not intended on making Nevada his permanent residence until he had secured

19 permanent, full-time employment.  Toca acknowledges that his employment did not become full-

20 time or permanent until after the subject accident in February, 2004.  Toca further acknowledges that

21 he intended to keep his home in Mississippi as his legal residence until he was certain that his move

22 would be permanent.

23       Furthermore, the Court finds the Nevada Supreme Court's decision in Williams v. United

24 Services Automobile Association, 849 P.2d 265 (Nev. 1993), applicable and persuasive in the instant

25 case.  In Williams, the Nevada Supreme Court was faced with a similar situation wherein a

26 California resident was involved in a car accident in Nevada.  Williams claimed that Nevada's

6

1   insurance laws should apply, thus allowing him to collect a higher amount of underinsured coverage.

2   The case involved the application of Nevada's choice of law rules as there was a conflict in the

3   application of Nevada and California insurance laws under the circumstances of the case.  Under

4   factual circumstances similar to this case, the Nevada Supreme Court held that California law

5   governed the subject policy.

6           Here, too, and for the reasons listed above, the Court finds that the circumstances require the

7   application of Mississippi law in the governance of the subject insurance policy.

8           **B. Choice of Law Provision**

9           The subject policy also contains a choice of law provision that supports the application of

10  Mississippi law.  In Nevada, "[i]t is well settled that the expressed intention of the parties as to the

11  applicable law in the construction of a contract is controlling if the parties acted in good faith and not

12  to evade the law of the real situs of the contract." Sievers v. Diversified Mortgage Investors, 603

13  P.2d 270, 273 (Nev.1979) (citing Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 407

14  (1927)).  Sievers, establishes two prerequisites courts must consider before deferring to a choice-of-

15  law provision in a contract: that "[t]he situs fixed by the agreement . . . have a substantial relation

16  with the transaction," and "the agreement must not be contrary to the public policy of the forum." Id.

17          The choice of law provision enumerated in the subject policy states,

18          If any provision of this policy fails to conform with the legal requirements of the state
19          listed on your application as your residence, the provision shall be deemed amended
            to conform with such requirements.  All other provisions shall be given full force and
20          effect.  Any disputes as to the coverages provided or the provisions of this policy shall
            be governed by the law of the state listed on your application as your residence.
21

22  (Pl.'s Mot. For Summ J. Ex. B. P. 38.)  Here, the Court finds that the contract/policy at issue was

23  entered into in Mississippi, and that there is no substantial evidence suggesting that the parties acted

24  in any manner other than in good faith when entering into subject insurance policy.  Indeed, Toca has

25  previously been the beneficiary of the subject policy when he was involved in the accident on

26  September 27, 2003.  The Court also finds the situs fixed by the agreement is substantially related

7

1   with the transaction, as the premium charged by Progressive was based upon the risks involved with

2   driving in Mississippi.  Furthermore, the Court finds the subject policy is not contrary to Nevada

3   public policy.[2]

4   Therefore, even assuming *arguendo* that the substantial relationship test did not require the

5   Court to apply Mississippi law, the Court finds the language of the policy's choice of law provision

6   contains the express intent and understanding of the parties that Mississippi law would govern the

7   policy.

8   **IV. Mississippi Insurance law**

9

10   According to Mississippi statute, every automobile liability insurance policy is required to

11   contain a provision for UM/UIM coverage unless the policy holder rejects such coverage in writing.

12   Wickline v. U.S. Fidelity & Guar. Co., 530 So.2d 708, 711 (Miss. 1998) (overruled on other grounds

13   by Meyers v. American States Ins. Co., 914 So.2d 669 (Miss. 2005)).  Furthermore,  Miss.Code Ann.

14   § 83-11-103(c)(iii) (Supp.1988) states that the term "uninsured motor vehicle" shall mean,

15
16      (iii) An insured motor vehicle, when the liability insurer of such vehicle has provided
       limits of bodily injury liability for its insured which are less than the limits applicable
       to the injured person provided under his uninsured motorist coverage; ....
17

18   Applying this statute in determining whether an insured vehicle qualifies as underinsured,

19   Mississippi courts compare the limits of liability coverage on that vehicle to the uninsured limits

20   provided through the injured party's own coverage.  See Washington v. Georgia American Ins. Co.,

21   540 So.2d 22 (Miss. 1989).  For example, in Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436

22   (Miss. 1992), the Mississippi Supreme Court explained that a determination of an individual's

23   "uninsured" status is made "solely by comparing the respective policy limits—that is, the liability of

24

25

26      [2]See infra, n. 3

8

the tortfeasor compared to the UM limit applicable to the injured party." Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co., 614 So.2d 918 (Miss. 1992).

Here, tortfeasor Kelly was insured by State Farm with liability policy limits of $100,000.00 per person and $300,000.00 per accident.  Toca's coverage under the subject policy provides UM/UIM coverages in the amounts of $100,000.00 per person and $300,000.00 per occurrence.   In comparison, the liability and UM/UIM limits for Kelly and Toca are virtually identical.  Therefore, pursuant to Mississippi law, the coverages offset, and Kelly is not underinsured.  Therefore, Toca cannot recover UIM benefits from Progressive under his UIM policy.[3]

For this reason, the Court finds that Kelly is not uninsured as a matter of law under the Mississippi policy, and that Progressive has no duty to afford Toca underinsured bodily injury coverage under the terms and conditions of the subject policy.

**V. Conclusion**

The Court finds it unnecessary to issue a ruling regarding whether Defendant Toca breached the terms and conditions of the policy by failing to notify Progressive of his change of address from Mississippi to Las Vegas, Nevada.  It does find however, that the UM/UIM provisions of the subject insurance policy issued to Toca are valid and enforceable with respect to Toca's  February 18, 2004 claim.  The Court also finds that Kelly is not uninsured as a matter of law under the Mississippi

---

[3]Defendant argues that "Nevada would never stand for [the] result" of ruling on behalf of an insurer in the event of a tie (or identical coverage) when comparing liability limits.  The Court disagrees.  Reading Miss. Code Ann. § 83-11-103(c)(iii) literally, an uninsured vehicle is one where the limits of bodily injury are **less than** the limits applicable to the injured person's UM/UIM coverage.

The only circumstances under which Nevada courts have held an insurance policy to run contrary to public policy were cases where the foreign state's laws completely precluded recovery.  See Williams 109 Nev. 333 (stating that in scenarios similar to that of Williams, the court had applied Nevada public policy only where other states' laws would preclude all recovery for the injured insured).  Here, Toca has already received $100,000.00 from State Farm under Kelly's policy.

Thus, Toca has not been precluded recovery, and application of Mississippi law in this case is not contrary to Nevada law.

9

1  policy, and that Progressive has no duty to afford Toca underinsured bodily injury coverage under the

2  terms and conditions of the Mississippi policy.

3       For the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for

4  Summary Judgment (#56) is **GRANTED**.

5       DATED this 28th day of September, 2007.

6

7

8                                    _____
                                      Kent J. Dawson
9                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26